## Commonwealth v. Kumitis (No. 1)

*Donald W. Van Artsdalen*, District Attorney, for Commonwealth.

*William Thatcher*, for defendants.

BIESTER, P. J., July 11, 1958.—The above-named defendant, Albert Anthony Kumitis, having been convicted of the charges of burglary, larceny, receiving stolen goods and conspiracy on the above-numbered

bills of indictment, has filed with the court a petition, prepared by himself, seeking a correction of the notes of testimony filed in the above case.

The objections are apparently filed under the Act of May 11, 1911, P. L. 279, sec. 4, 12 PS §1199. It provides as follows:

"When the evidence in any case is transcribed, it shall be the duty of the official stenographer to lodge the same with the prothonotary or clerk of the court, and notify the parties interested or their counsel that the same will be duly certified and filed, so as to become part of the record, if no objections be made thereto within fifteen days after such notice. If objections be made, the matter shall be heard by the court, and such order made regarding the same as shall be necessary in order to comport with the occurrences at the trial. If no objections be made, or when, after objection, the transcript shall have been so made to comport with the occurrences at the trial, said transcript shall be duly certified by the official stenographer and by the trial judge, shall be filed of record in the case, and shall be treated as official and part of said record for the purposes of review upon appeal, and shall be considered as prima facie accurate whenever thereafter offered in evidence in the same or any other proceeding, without the necessity of calling the stenographer as a witness to prove the same."

Upon the presentation of the petition we allowed a rule to show cause upon the district attorney and he filed an answer to the rule. We then heard argument on the petition and answer.

The first request is that we correct the notes of testimony to show that defendant appeared before the court requesting the assignment of counsel, for the purpose of determining whether witnesses were material, and therefore should be subpoenaed, at the cost

of the county, for the benefit of defendant. There was no stenographic record of the application, but the best recollection of the court is that, after a request by Mr. Kumitis that a number of witnesses be subpoenaed, he appeared before the court at our direction in order that we might explain to him that we could not subpoena any witness he might choose to have subpoenaed, for the testimony of such witnesses might be completely immaterial in the trial of his cause. We at that time suggested the appointment of counsel for defendant for the limited purpose of discussing with him the materiality of the testimony of such proposed witnesses and an attorney agreed to assist Mr. Kumitis and the court for this purpose. Such procedure was not a part of the record of the trial and of course the record, therefore, should not be corrected in this particular.

The second request is that an alleged remark of the court be made a part of the record. According to the contents of the petition, Mr. Kumitis is alleged to have told the court that certain persons were not permitted to visit him while he was incarcerated for the purpose of assisting him with the trial of the case, that some reference was made to a letter addressed to the warden of the Philadelphia County Prison by an assistant district attorney of this county suggesting that no one be permitted to visit defendant. It is further stated that the court examined the letter referred to and stated: "I have read the letter and it does not state anything of that kind." The trial judge recalls that there was some discussion about this letter at side bar with counsel for defendant and the district attorney and the discussion in this connection was not made a part of the record, nor was there any request that it be. We may add that the basis of the request that this particular remark attributed to the trial judge, out of context with the rest of the conversation

between the court and counsel, be set forth as a part of the record is the contention that petitioner was denied due process of law before trial. We may point out that defendant himself agreed to proceed with the trial as revealed by the notes of testimony, he having said: "Here I have about twelve witnesses here now who came a big distance. I would like to get through with this thing." The court then asked him whether he would agree that counsel be appointed for him and he replied that this was agreeable. There was no request by counsel that any part of this side-bar conference be made a part of the record.

Request 3 alleges that the record is incorrect in that the testimony set forth in paragraph 3 of the petition, attributed to one of the witnesses, was inconsistent with certain other of the witness' testimony. This is obviously not the purpose of such a petition as the present one which seeks to correct the record. Such a petition is not to be used as a basis for argument of inconsistencies in testimony.

The fourth request was to the effect that the notes of testimony failed to disclose the fact that the district attorney objected to the calling by subpoena of certain witnesses for defendant. We do not recall that the district attorney did object and in any event if he did so, the court overruled his objection for we directed that both Davelman and Ghaul, the two witnesses petitioner sought, should be produced, if possible, the following morning, the request having been made approximately 25 minutes after four of the day before such witnesses were requested to be produced at trial. Defendant does not contend that he did not reply to the court's directive, as the record discloses: "I don't want Ghaul, I don't want him, just Davelman." Defendant states that this statement was a reply to the district attorney's objection. This was clearly not so, and, if it were so, would be entirely immaterial.

The fifth request states that as the defense began its case three large crowbars and three sledgehammers were brought into the courtroom and placed in front of the jury, and remained there for two days, although such implements were never introduced into the record as evidence. We have no recollection of this situation and certainly, if it did occur, and counsel for defendant had asked that they be removed, the request would have been granted. The district attorney, in his answer to the petition, denies the allegations contained in this paragraph and we have no independent recollection of them. Since nothing was said during the course of the trial with reference to such implements and their production in front of the jury, if this did occur, it can hardly be anticipated that the stenographer would have noted their presence, or that he was in error in failing to do so.

The sixth request has to do with the following testimony. The district attorney asked this question: "Now, where were you—where did you have your place of business before that?" To which petitioner-defendant replied: "Well, you want me to bring my record out? Is that what you are getting at? If you do, I will tell you." Counsel for defendant then said to defendant: "Answer the question, Mr. Kumitis, please." Defendant then answered: "I was in jail before that." Petitioner contends that his question as to whether or not it was the intention to bring out the record was addressed to the trial judge, rather than to the district attorney. It is further alleged that the judge nodded in affirmance to this question so addressed to him, and that the record is deficient in failing to show this. Not only does the trial judge emphatically deny that he directed defendant to answer this question, but the very nature of the language used by defendant clearly indicates it was in reply to the ques-

tion asked by the district attorney. The question, as heretofore noted, was in part: "Is that what you are getting at?" It is clear that the court was getting at nothing and that the question is very definitely directed to the district attorney. We regard the record as being complete and correct in this particular.

The seventh request is that a certain paper marked Commonwealth's exhibit 8, although not offered in evidence, should be introduced into the record. This is so clearly improper that it requires no discussion whatsoever.

The eighth request is that the stenographer failed to note certain expressions on the trial judge's face being "surprise, then amazement, then anger and righteous indignation". The stenographer's transcript of the record is not written as a script for a play, and, of course, even if this play of emotions was displayed on the face of the trial judge, with which we do not agree, it would be absurd to require the stenographer to so note it.

The ninth request is that the record state that the trial judge requested the district attorney to sign the bills of indictment immediately prior to the charge to the jury. It is our best recollection that the court did request the district attorney to sign the bills of indictment and that the district attorney, at the court's request, did so sign them. This was a purely ministerial act (see Commonwealth ex rel. Graham v. Claudy, 171 Pa. Superior Ct. 562, 565, and cases therein cited; Commonwealth ex rel. Penland v. Ashe, 142 Pa. Superior Ct. 403, 404), and we see no occasion to include it in the record, although for the purposes of the record of this case we will agree that such request was made and immediately complied with.

The tenth request is to delete the following question by the court shortly before the completion of his charge. The record discloses the following: "The

Court: Are there any other matters to which you would have me refer?" This, of course, was a question addressed to the district attorney and counsel for defendant, and it should not be deleted from the record. In point of fact the testimony discloses that, when this question was asked, counsel for defendant requested seeing the court at side bar and, at side bar, suggested that the court had erred in a statement of fact made to the jury and that the request of counsel was acceded to and the correction made by the court.

Request 11 contends that a certain phrase was "edited into the record". The basis for the request is argumentative in the sense that petitioner contends that this testimony was unlikely, but we have no reason to believe that it is not a correct transcript of the testimony as produced.

The twelfth request is that the record should show how long the jury engaged in the deliberation of the case before arriving at a verdict. The record does disclose that the court convened at 1 p.m. for the purposes of charging the jury and that the verdict was returned at 2:40 p.m. We think there is no occasion to set forth the precise time the jury was engaged in the deliberation of this case.

The duties of the official stenographer are set forth in the Act of May 1, 1907, P. L. 135, sec. 3, 17 PS §1804, which provides as follows:

"The official stenographers of the several courts of common pleas, when engaged in such courts, or in the courts of oyer and terminer, general jail delivery and quarter sessions of the peace, shall take full stenographic notes of the testimony in all judicial proceedings in any trial of fact, at law or in equity, together with the judge's charge, and of any and every ruling, order, or remark of the trial judge, or judges, relating to the case on trial, made in the presence of the jury,

in any stage of the proceedings, to which ruling, order or remark either party may except in the same manner and with the same effect as is now practiced in relation to the judge's charge; and upon any trial without a jury, shall likewise report the proceedings, including the testimony of all witnesses examined and matter offered in evidence, and the rulings of the court upon the admission or rejection thereof, and the findings of the court. And it shall also be the duty of such stenographers to take full stenographic notes of such other matters, in connection with the business of the courts, as the judges of the respective courts, from time to time, may direct."

We believe this act was complied with in all particulars, but, as heretofore adverted to, we will agree our request directed to the district attorney that he sign the bills of indictment may become a part of the record and the record will be considered amended to this extent, although we regard the omission in the record, if such it was, as being completely immaterial. We say "if such it was" because we do not have a clear recollection as to whether this suggestion was made within the hearing of the jury or was made at side bar. It appears clear to us that matters which occur at side bar and thus not within the hearing of the jury should not be made a part of the transcript, unless request therefor be made by counsel or the court.

We may add that defendant in this case was represented by a competent member of the Bucks County bar appointed by the court for the purpose. He is now an assistant district attorney, and saw that defendant's rights were in all particulars substantially protected. We say this because the petition would have us infer that certain matters should have been made a part of the record at the request of his counsel, which would not customarily have been transcribed. There is no merit in this contention.

*Order*

And now, to wit, July 11, 1958, the objections to the record are overruled and the prayer of the petition for the correction thereof is refused. The court will agree, however, that the district attorney, immediately prior to the charge of the court, was advised of his failure to sign the bills of indictment and that the bills of indictment were then immediately so signed by him.