Commonwealth *v*. Sliva, Appellant.

Submitted September 13, 1960. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, WATKINS, and MONTGOMERY, JJ.

*Henry Sliva,* appellant, in propria persona.

*John R. Graham,* Assistant District Attorney, and *Jacques H. Fox,* District Attorney, for Commonwealth, appellee.

OPINION BY WATKINS, J., November 16, 1960:

This is an appeal from the judgment of sentence of the Court of Quarter Sessions of Delaware County and from the order of the said court refusing motions in arrest of judgment and for a new trial.

Henry Sliva, the defendant-appellant, was tried on eight bills of indictment charging burglary and robbery of private residences in Delaware County. At the conclusion of the Commonwealth's case, the district attorney suggested that he was unable to connect the defendant with the crimes charged in six of the indictments because of failure of identification and the court

below sustained demurrers by the defendant to these six indictments. The defendant was convicted by the jury on two indictments charging burglary and robbery, respectively, of the residence of Mr. and Mrs. Charles H. Howe, in Radnor Township, Delaware County. Motions in arrest of judgment and for a new trial were denied and the defendant was sentenced on the robbery charge to undergo imprisonment in the Eastern State Penitentiary for a term of 5 to 10 years. This sentence to run concurrently with the sentence he was then presently serving of 20 to 40 years for other convictions. The court suspended sentence on the burglary conviction.

Mrs. Howe testified that the defendant appeared in the bedroom of her home on the morning of April 2, 1958, at about 4:00 a.m., and awakened her and her husband; that the light was on in the hall and he carried a small red-tipped pencil flashlight and wore a bandanna-like mask; that he moved around the room and walked between the twin beds on which they were lying; that he had a distinctive walk which she described as "he picked his feet up very slowly and walked rather like an animal"; that he made her husband get up to secure his pocketbook and he was taller than her husband—about six feet; that his hands trembled; that he talked to them and his voice was "resonant yet muffled"; that the defendant in the courtroom was the man who was in the bedroom and that she had also identified him in November of 1958, after his arrest, in a line-up in lower Merion Township; that she was able to identify him from his general appearance, his walk, his voice and his trembling hands; that the defendant had taken $22.35 from their home, $2.35 from her husband's pocketbook and $20 from her handbag; and that he entered the house by breaking the lock of a downstairs window.

The Commonwealth also presented testimony that at the time of the arrest he had in his possession a .38 caliber revolver and a pencil type red-tipped flashlight. These articles were introduced into evidence as part of the Commonwealth's case in all eight charges then being tried. There was no objection to their admission. The defendant did not testify.

It is interesting to note that after the verdict and at the time of the defendant's request to file motions in arrest of judgment and for a new trial, his counsel said to the court: "MR. LORD: If your Honor pleases, with respect to this motion for new trial, the origin of this idea is Mr. Sliva's, it is not mine. I don't want to be in the position of having to advocate on his behalf this motion. First of all, I know of no legal reason, standing here today and having just finished the trial, to advance for a new trial. So I would like to go on record now with this Court that I have finished my task with respect to this case." The defendant then presented his own motions but said to the court, "I appreciate your Honor, you were very fair. I never saw a judge so fair as you."

The defendant complains that it was error to prove the taking of $22.35 instead of $23 as set forth in the bills of indictment; that it was error to prove that $20 was taken from Mrs. Howe when the indictment alleged that $23 was taken from Mr. Howe; that it was error to permit the jury to have the gun which was found in his possession at the time of arrest and introduced into evidence without objection; and that it was error for the court to say, "several other witnesses identified the defendant by voice" when no other witness in the case did identify the defendant by voice.

Proof of the felonious taking of money in an amount either greater or less than averred in the indictment will sustain a conviction. *Com. v. Dingman,*

26 Pa. Superior Ct. 615 (1904); *Com. v. Haimbach,* 151 Pa. Superior Ct. 581, 30 A. 2d 653 (1943); *Com. v. Kumitis,* 190 Pa. Superior Ct. 133, 151 A. 2d 653 (1959). As to the complaint concerning the ownership of the stolen money, it is only necessary to point out here that the Commonwealth did prove that a sum of money was taken from the owner set forth in the indictment. This is sufficient to support the conviction together with the fact that the entire sum was taken from the home of the victim named in the indictment. We agree with the Commonwealth, that at worst it would be considered surplusage and not fundamental error.

The misquotation of the testimony in the charge that several of the witnesses identified the defendant by voice is not fundamental error. No objection was made by defendant's counsel at the time when a correction could have been made and examination of the entire charge concerning identification testimony discloses that the court carefully set forth the law and carefully protected the rights of the defendant. The misquotation, unobjected to, constitutes, at best, harmless error. A general exception to the charge of the court raises only questions of fundamental error, or such as is clearly prejudicial to the case of the defendant. "The party may not sit silent and take his chances of a verdict and then if it is adverse complain of the matter, which, if an error, would have been immediately rectified and made harmless." *Com. v. Longwell,* 79 Pa. Superior Ct. 68, at page 74 (1922).

This is also true concerning the offer of the court to permit the jury to examine the gun that had been admitted into evidence. When the defendant was asked if he had any corrections to suggest, the answer was, no. The gun had been admitted after testimony that he had it in his possession at the time of his ar-

rest and that a victim in one of the cases to which a demurrer had been sustained, had testified to its possession by the defendant. It was introduced by the Commonwealth together with other exhibits and no objection was made by the defendant. Although admittedly, an unnecessary detail, it was properly admitted, without objection, and the court could permit the jury to examine it. *Com v. Lawrence*, 282 Pa. 128, 132, 127 A. 465 (1925). However, there is no evidence that the jury did examine it.

Judgment affirmed.