**UNITED STATES of America ex rel. Henry SLIVA**

v.

**A. T. RUNDLE, Supt., et al.**

**Misc. No. M–4158.**

United States District Court
E. D. Pennsylvania.

Feb. 7, 1969.

---

Henry Sliva, pro se.

Stephen J. McEwen, Jr., Dist. Atty. of Delaware County, by Ralph B. D'Iorio, Asst. Dist. Atty., Media, Pa., for respondents.

## OPINION AND ORDER

WOOD, District Judge.

This petition is one of numerous collateral attacks by relator against several convictions in 1959. The instant petition involves his indictment and conviction in the Court of Quarter Sessions for Delaware County on charges of robbery and burglary of a private residence. At trial relator was represented by private counsel. but that counsel withdrew after trial. Relator then filed and argued *pro se* motions for new trial and in arrest of judgment, which were dismissed by the trial court. Relator then filed a *pro se* appeal to the Superior Court, and that court in an opinion reported at Commonwealth v. Sliva, 193 Pa.Super. 490, 165 A.2d 689 affirmed the judgment of conviction. Allocatur to the Supreme Court of Pennsylvania was refused on February 28, 1961. Relator's petition to this court for a writ of habeas corpus (on grounds separate from those raised here) was subsequently denied. United States ex rel. Sliva v. Commonwealth, 196 F.Supp. 50, 51 (D.C.1961). Relator thereupon apparently applied for certiorari to the United States Supreme Court, which was denied at 368 U.S. 994, 82 S.Ct. 612, 7 L.Ed.2d 531 (1962), rehearing den. 369 U.S. 832, 82 S.Ct. 847, 7 L.Ed.2d 797 (1962).

Subsequently, relator filed a petition for a writ of habeas corpus in the Court of Common Pleas for Delaware County, which was dismissed. That decision was affirmed by the Superior Court, and a petition for allowance of appeal to the Supreme Court of Pennsylvania was denied on August 19, 1963.

Thereafter, on February 17, 1965, relator filed another petition for writ of habeas corpus in the Court of Common Pleas of Delaware County raising nearly the same allegations as are presented in the instant petition. Hearing was held on March 19, 1965 before Judge Sweney, who thereafter dismissed the petition. This decision was affirmed by the Superior Court, and a petition for allowance of appeal to the Supreme Court of Pennsylvania was denied on August 16, 1966.

Relator has once again applied to this Court for a writ of habeas corpus on the following grounds: that his right to secure counsel was violated by the police during nine days while he was in custody of the police; that his right against self-incrimination was violated in the course of line-up procedure; and that he was deprived of the assistance of counsel to appellate review.

We think that, according to constitutional standards enunciated by the United States Supreme Court since the time this case was heard in the state courts, relator was denied the right to counsel on direct appeal from his conviction. We do not deem it necessary to hold a hearing because the necessary facts are apparent from the record of the trial and from testimony in the state hearing. At trial, following the return of the jury's guilty verdict, relator indicated to the court that he felt that there had been legal errors in the proceedings against him, and that he wished to seek redress by moving for a new trial and, if necessary, appealing to a higher tribunal. He stated that: " * * * I don't think I should be convicted in this case. I think the higher Court should hear this." (N.T. 101) At this point relator's trial counsel stated that he knew of no legal reason to advance as grounds for a new trial (N.T. 101), and asked leave of court to withdraw from the case. The court agreed, saying "Very well. I suppose you (i. e. Relator) can make your own motion." (N.T. 103) Relator thereupon pursued his motion for a new trial and his appeal *pro se.*

It is now well established that the equal protection clause of the Fourteenth Amendment requires the state to appoint counsel for indigents after conviction to prosecute their first appeal as of right. Even if the court and trial counsel do not think that there are any errors in the record, the indigent convicted is entitled as a person of means would be to "benefit of counsel's exami-

nation into the record, research of the law, and marshalling of arguments on his behalf * * *." Douglas v. California, 372 U.S. 353, 358, 83 S.Ct. 814, 817, 9 L.Ed.2d 811 (1963). This decision is to be applied retroactively. See McConnell v. Rhay, 393 U.S. 2, 89 S.Ct. 32, 21 L.Ed. 2d 2 (1968). It is possible, of course, for this right to be waived, but such a waiver to be effective must be an intelligent relinquishment of a known right. The fact that an indigent does not specifically request counsel on appeal cannot in itself be construed as a knowing and intelligent waiver. As the Supreme Court said in Swenson, Warden v. Bosler, 386 U.S. 258, 87 S.Ct. 996, 18 L.Ed.2d 33 (1967), "When a defendant whose indigency and desire to appeal are manifest does not have the services of his trial counsel on appeal, it simply cannot be inferred from defendant's failure specifically to request appointment of appellate counsel that he has knowingly and intelligently waived his right to the appointment of appellate counsel." 386 U.S. 258, at 260, 87 S.Ct. 996 at 998.[1]

It is clear from the record of trial that relator felt that there were legal errors in proceedings against him and that he desired to have his case presented to an appellate court. From the fact that relator's trial counsel withdrew and that relator was prepared to commence an appeal of his own accord, the question of whether relator was appealing *pro se* because he could not afford to retain counsel[2] should have been pursued. Commonwealth v. Ezell, 431 Pa. 101, 104, 244 A.2d 646 (1968)[3] Under

---

1. See also Commonwealth v. Ezell, 431 Pa. 101, 103, 244 A.2d 646, 647 (1968) where it is stated that:

    "Where * * * the trial record is silent as to what, if anything, the defendant was told about his appellate rights, the burden of proof in a collateral proceeding is upon the Commonwealth to show that these rights were knowingly and intelligently waived. Such waiver * * * could not be established unless it was shown not only

that the accused knew of his absolute right to appeal, but also that he knew of the right to have counsel appointed to assist him if indigent."

2. Relator's uncontradicted testimony in the state habeas corpus hearing was that he could not afford appellate counsel. See, for instance, pp. 21-2.

3. "Nor do we think that [these] requirements * * * become relaxed simply because appellant was able to afford pri-

**616**

such circumstances, it should appear on the record that the accused knew of his right to counsel, and that he made an intelligent waiver of that right. Beasley v. Wilson, 370 F.2d 320 (9th Cir. 1966); Cranford v. Rodriguez, 373 F.2d 22 (10th Cir. 1967). Relator clearly knew of his right to appeal, but there is nothing on the record to indicate that he knew of his right to counsel on appeal.

In view of the fact that relator did take a *pro se* appeal from the verdict here complained of, and that his case has been reviewed numerous times on collateral attack petitions prepared by this petitioner with uncommon legal proficiency, the possibility of error being found on appeal at this point might seem slight indeed. However, there may be some error which relator is precluded from raising by way of post-conviction remedies, and which he neglected to urge on direct appeal due to lack of counsel. Therefore, if the state does grant him an appeal nunc pro tunc with the assistance of counsel, he will then be able to raise questions which he might have raised on direct appeal from his conviction had he had counsel at that time.

Although we consider relator's other claims to be lacking in merit in view of our decision in another application by him, United States ex rel. Sliva v. Rundle, 222 F.Supp. 774 (D.C.1963), and the decisions of the United States Supreme Court in United States v. Wade, 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967) and Stovall v. Denno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), we will dismiss them without prejudice due to the possibility of further state proceedings.

vate trial counsel. The possibility that a man's financial well can dry up is always very much present. And even if this well does not yield its first empty bucket until after trial, nevertheless the defendant, for purposes of appellate counsel, is still just as indigent as if he never had a dime. * * *

"It could even be said that the man who becomes indigent only *after* trial

needs to be told of his *Douglas* rights even more than the man who has already experienced the services of court appointed counsel. For the former man, having hired *private* counsel to try his case, might have had no opportunity to learn of the existence of *free* counsel at any stage of the criminal proceedings." 431 Pa. 101 at 104, 244 A.2d 646 at 647.