**SOUTHEASTERN PENNSYLVANIA TRANSPORTATION AUTHORITY, Petitioner,**

v.

**WORKERS' COMPENSATION APPEAL BOARD (HERDER), Respondent.**

Commonwealth Court of Pennsylvania.

Argued Oct. 2, 2000.

Decided Dec. 21, 2000.

Michael D. Schaff, Philadelphia, for petitioner.

Annabelle R. Cedar, Philadelphia, for respondent.

Before COLINS, Judge and KELLEY, Judge (P.), and MIRARCHI, Jr., Senior Judge.

COLINS, Judge.

Before the Court is a petition for review from an order of the Workers' Compensation Appeal Board (Board), dated December 13, 1999, that affirmed the decision of a Workers' Compensation Judge (WCJ) granting Marian Herder's (Claimant) fatal claim petition. For the reasons set forth below, we reverse.

On April 5, 1993, Mr. James Herder (Decedent) was struck in the mouth in the course of his employment as a general helper with the Southeastern Pennsylvania Transportation Authority (SEPTA). As a result, one tooth was knocked out, and other teeth were loosened and later, extracted.[1] SEPTA accepted liability and issued a Notice of Compensation Payable commencing payment of temporary total disability benefits.[2] Approximately three weeks later, on April 29, 1993, Decedent allegedly shot himself.[3]

On November 2, 1993, Claimant filed a fatal claim petition claiming her husband's suicide was attributable to his work related injuries. On August 22, 1997, a WCJ granted Claimant's fatal claim petition. The WCJ found Claimant credible and accepted her testimony in its entirety. The WCJ also found the expert medical testimony of Claimant's witness, Dr. Robert Sadoff credible and persuasive in establishing the fact that Decedent suffered from depression related to his work injury. The Board found that Claimant satisfied her burden of proving that her husband's injury so dominated his mind as to override normal rational judgment. The Board affirmed the WCJ's decision by order dated December 13, 1999. This appeal by SEPTA followed.[4]

---

1. No dental or medical records were entered into the record.

2. It is undisputed that Decedent sustained a physical injury compensable pursuant to Section 301(c) of the Workers' Compensation Act, Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. § 411.

3. The WCJ found that the Deceased committed suicide. (WCJ Finding of Fact No. 9). The death certificate, which was admitted into evidence without objection, supports this finding. It states that the Deceased's immediate cause of death was a "gunshot wound to head" and it describes how the injury occurred as "shot self." This evidence is corroborated by Claimant's testimony as to how she found her late husband.

4. Our scope of review is limited to determining whether necessary findings of fact are supported by substantial evidence, whether an error of law was committed, or whether constitutional rights were violated. *Carnegie Mellon University v. Workmen's Compensation Appeal Board,* 165 Pa.Cmwlth. 392, 645 A.2d

Claimant testified that after the work injury her husband experienced a change in personality. He was withdrawn and hostile. Claimant testified that Decedent returned to work for a couple of days, but then stopped working. On April 26, 1993, Claimant took her late husband to the Medical College of Pennsylvania because he was suffering from pain related to his work injury. The emergency room referred Decedent to his family doctor, Dr. Clarence Martin. That same day, Claimant telephoned Dr. Martin, who prescribed an anti-depressant for the Decedent and recommended an evaluation by Dr. Evans, a psychologist.

On April 29, 1993, approximately three weeks after the work injury, Decedent picked up the referral for Dr. Evans from Dr. Martin's office. Decedent never saw Dr. Evans; rather he returned home. When Claimant went home that same day, she found her husband on their bed with a gunshot wound to his head.

This Court adopted the following chain of causation test to determine the compensability for suicide deaths:

(1) a work related injury as defined by Section 301(c) of The Pennsylvania [Workers'] Compensation Act;

(2) the injury caused the employee to become dominated by a disturbance of the mind of such severity as to override normal rational judgment; and

(3) the disturbance resulted in the employee's suicide.

*McCoy v. Workmen's Compensation Appeal Board (McCoy Catering Services, Inc.)*, 102 Pa.Cmwlth. 436, 518 A.2d 883 (1986), *petition for allowance of appeal denied*, 517 Pa. 595, 535 A.2d 84 (1987).

▰▰▰▰ The first issue that must be addressed is the admissibility of Claimant's testimony. In a fatal claim petition, testimony regarding Decedent's appearance, demeanor, and emotions is admissible evidence. *Township of Haverford v. Work-*

men's Compensation Appeal Board (Angstadt), 118 Pa.Cmwlth. 467, 545 A.2d 971 (1988); *Griesinger v. Workmen's Compensation Appeal Board (Atlantic Richfield Co.)*, 94 Pa.Cmwlth. 332, 503 A.2d 1016 (1986). Undoubtedly, Claimant was the best qualified to testify concerning Decedent's emotions prior to his death. However, a medical expert is required to testify as to Decedent's alleged depression. *Kitchen v. Workmen's Compensation Appeal Board (Mesta Machine Co.)*, 73 Pa. Cmwlth. 289, 458 A.2d 631 (1983). Where the work-related nature of the initial injury is obvious, but its relationship to ongoing disability may not be, there is a need for more than lay evidence, i.e., for medical evidence. *Cardyn v. Workmen's Compensation Appeal Board (Heppenstall)*, 517 Pa. 98, 534 A.2d 1389 (1987). Consequently, Mrs. Herder is not qualified to diagnose depression.

Claimant presented the deposition testimony of Dr. Sadoff, a forensic psychiatrist, who opined that Decedent's "... injury at work was a substantial factor in his suicide on the 29th of April." (Deposition of Dr. Sadoff, p. 30.) Dr. Sadoff opined that depression following a severe injury or threat of loss of employment can lead to suicide. Dr. Sadoff asserted that Decedent suffered from depression based on Decedent's visit to the Medical College of Pennsylvania. At that time, Decedent complained of a decreased appetite, weight loss, and weakness. Dr. Sadoff corroborated his opinion with a meeting with Claimant, Dr. Martin's referral to a psychiatrist, and a note in Dr. Martin's records on April 14, 1993 that stated that Decedent complained of weakness and dizziness.

SEPTA offered Dr. Robert DeSilverio's deposition testimony, which asserted Decedent did not suffer from any disturbance of the mind. He believed that if Decedent was depressed, the depression was related to factors in his personal life, such as

389 (1994), *petition for allowance of appeal*  denied, 542 Pa. 675, 668 A.2d 1137 (1995).

impotence and alcohol problems. Dr. De-Silverio further pointed out that although Dr. Martin's notes indicate that Decedent complained of weakness and dizziness on April 14, 1993, there is evidence that Decedent complained of this symptomology prior to the work injury.

SEPTA challenges the credibility findings of the WCJ and contends that the record is devoid of any legally competent evidence to support the findings. We agree. While Dr. Sadoff was certainly competent to testify in light of his academic and professional credentials, his testimony is incompetent because of the lack of evidence in the record upon which he based his opinion that the work injury caused the Decedent to become dominated by a disturbance of the mind of such severity as to override normal rational judgement. Consequently, there is not substantial evidence to support the Board's conclusion.

Initially, we note that an expert's medical opinion regarding causation may be based on a history obtained from the claimant, assumed facts of record, and/or medical reports submitted into evidence. *Robert W. Borschell Painting v. Workmen's Compensation Appeal Board (De-Muro)*, 154 Pa.Cmwlth. 157, 623 A.2d 394 (1993), *petition for allowance of appeal denied*, 535 Pa. 677, 636 A.2d 636 (1993); *see also Henderson v. Workmen's Compensation Appeal Board (County of Allegheny)*, 78 Pa.Cmwlth. 243, 467 A.2d 410 (1983). Clearly, a WCJ's acceptance of the medical opinion of one expert witness over that of another is not the basis for reversible error. *Bruckner v. Workmen's Compensation Appeal Board (Lancaster Area Vo–Tech)*, 104 Pa.Cmwlth. 290, 521 A.2d 980 (1987). This Court is keenly aware of the well-settled rule that it is within the discretion of the WCJ to accept or reject the testimony of any witness, including medical witnesses, in whole or in part. *Lombardo v. Workers' Compensation Appeal Board (Topps Company, Inc.)*, 698 A.2d 1378 (Pa.Cmwlth.1997), *petition for*

*allowance of appeal denied*, 553 Pa. 701, 718 A.2d 787 (1998).

It is equally well settled that when reviewing the determination of the WCJ the appellate court must ascertain whether, upon consideration of the evidence as a whole, the findings of fact have the requisite measure of support in the record. *Inglis House v. Workmen's Compensation Appeal Board (Reedy)*, 535 Pa. 135, 634 A.2d 592 (1993). It is this Court's duty to review the evidence upon which witnesses have relied. While an expert witness may base an opinion on facts of which he has no personal knowledge, those facts must be supported by evidence of record. *Kozak v. Struth*, 515 Pa. 554, 531 A.2d 420 (1987).

On this record, we disagree with the Board's determination that substantial competent evidence supports the conclusion of the WCJ that Decedent's suicide resulted from the workplace accident. *Bethenergy Mines v. Workmen's Compensation Appeal Board (Skirpan)*, 531 Pa. 287, 291, 612 A.2d 434, 436 (1992) (scope of appellate review is whether the record contains substantial evidence that supports the findings of the workmen's compensation judge). Substantial evidence is such relevant evidence that a reasonable mind might accept as adequate to support a conclusion. *Murphy v. Workers' Compensation Appeal Board (Mercy Catholic Medical Center)*, 721 A.2d 1167 (Pa. Cmwlth.1998), *petition for allowance of appeal denied*, 560 Pa. 691, 742 A.2d 678 (1999). Here, the fundamental difficulty with Claimant's case is the lack of evidence in the record causally connecting the work injury on April 5, 1993 and Decedent's depression and later, suicide on April 29, 1993.

After careful review of the record, we find that Dr. Sadoff's opinion was based on a theory unsupported by sufficient facts. Dr. Sadoff based his opinion on a conversation with Claimant, Dr. Martin's note that Decedent was stressed, and the fact

that Dr. Martin sent Decedent to a psychologist. Dr. Sadoff never personally examined the deceased.[5] The only diagnosis of clinical depression was Dr. Sadoff's medical opinion. However, the record indicates that the Deceased had symptoms of depression (impotence and drinking problem) prior to the work injury. Dr. Sadoff readily admitted that depression is not the usual reaction to the loss of a tooth. Furthermore, there is no evidence in the record that Claimant was in any danger of losing his job or that he would be denied appropriate dental treatment. We find this evidence insufficient to form a competent opinion that Decedent's loss of a tooth would cause him to become dominated by a disturbance of the mind of such severity as to override normal rational judgment, and approximately three weeks later, result in his suicide.

Accordingly, the order of the Workers' Compensation Appeal Board is reversed.

### ORDER

**AND NOW,** this 21st day of December 2000, the order of the Workers' Compensation Appeal Board in the above-captioned matters is reversed.

---

**5.** We note that it is not required that the medical expert's testimony as to causation be based upon a history personally given the to the physician by the patient. *Henderson.* A physician's opinion of the cause of an injury is of course often conditioned on the acceptance of a history as well as of the correctness of the results of objective tests, of the truthfulness of the patient's report of his subjective symptoms, of the accuracy of observations recorded in the patient's medical file, etc.

Medical causation testimony is not rendered equivocal because it is based on the witness's assumption of the truthfulness of the information provided him for the purpose of forming his opinion. However, the expert's medical opinion must be based on sufficient facts in the record. *McGraw–Edison/Power Systems Division v. Workmen's Compensation Appeal Board,* 62 Pa.Cmwlth. 302, 436 A.2d 706 (1981).